UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KRISTINA L. HANSEN,<br><br>        Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br><br>        Defendant. | CASE NO. 2:15-cv-02010-JCC-KLS<br><br>REPORT AND RECOMMENDATION REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS<br><br>NOTED FOR DECEMBER 23, 2016 |

    Plaintiff has brought this matter for judicial review of defendant's denial of her application for disability insurance benefits ("DIB"). This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261 (1976). For the reasons set forth below, the undersigned recommends that the Court reverse defendant's decision to deny benefits and remand this matter for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

    Plaintiff applied for DIB alleging she became disabled beginning April 1, 2012. Dkt. 7, Administrative Record ("AR") 12. Her application was denied on initial administrative review

1  and on reconsideration. AR 12. At a hearing held before an Administrative Law Judge ("ALJ"),

2  plaintiff appeared and testified, as did a vocational expert. AR 12. At the hearing, plaintiff

3  amended her alleged onset of disability date to October 31, 2012. AR 12. In a written decision,

4  the ALJ determined that plaintiff could perform jobs existing in the national economy, and

5  therefore that she was not disabled. AR 12-25. Plaintiff's request for review of the ALJ's

6  decision was denied by the Appeals Council, making that decision the final decision of the

7  Commissioner of Social Security (the "Commissioner"). *See* AR 1; 20 C.F.R. § 404.981.

8        On March 7, 2016, plaintiff filed a complaint in this Court seeking judicial review of the

9  Commissioner's final decision. *See* Dkt. 1. The administrative record was filed with the Court on

10  May 13, 2016. *See* Dkt. 6. The parties have completed their briefing, and thus this matter is now

11  ripe for the Court's review.

12        Plaintiff argues the ALJ's decision should be reversed and remanded for further

13  administrative proceedings because the ALJ erred in (1) evaluating the medical opinion

14  evidence; (2) discounting plaintiff's statements and testimony. Dkt. 14, p. 1. Plaintiff also argues

15  that defendant erred in improperly submitted a replacement exhibit on appeal. *Id.* For the reasons

16  set forth below, the undersigned agrees the ALJ erred in evaluating the medical opinions of Drs.

17  Nesanet Mitiku and Myron Goldberg. Also for the reasons set forth below, however, the

18  undersigned recommends that while defendant's decision to deny benefits should be reversed on

19  this basis, this matter should be remanded for further administrative proceedings.

20  DISCUSSION

21        The Commissioner's determination that a claimant is not disabled must be upheld if the

22  "proper legal standards" have been applied, and the "substantial evidence in the record as a

23  whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986);

24  *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v.*

1  *Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991). "A decision supported by substantial

2  evidence nevertheless will be set aside if the proper legal standards were not applied in weighing

3  the evidence and making the decision." *Carr*, 772 F.Supp. at 525 (citing *Brawner v. Sec'y of

4  Health and Human Sers.*, 839 F.2d 432, 433 (9th Cir. 1987)). Substantial evidence is "such

5  relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

6  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at

7  1193. The Commissioner's findings will be upheld "if supported by inferences reasonably drawn

8  from the record." *Batson*, 359 F.3d at 1193.

9        Substantial evidence requires the Court to determine whether the Commissioner's

10 determination is "supported by more than a scintilla of evidence, although less than a

11 preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10

12 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," that decision

13 must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That is, "[w]here there is

14 conflicting evidence sufficient to support either outcome," the Court "must affirm the decision

15 actually made." *Allen*, 749 F.2d at 579 (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir.

16 1971)).

17     I.  <u>The ALJ's Evaluation of the Medical Evidence</u>

18       Plaintiff maintains the ALJ erred in evaluating the medical opinions of Nesanet Mitiku,

19 M.D., Myron Golberg, Ph.D., Robert Bernardez-Fu, M.D., and Gordon Hale, M.D. *See* Dkt. 14,

20 pp. 2-12. For the reasons set forth below, the Court finds the ALJ erred in evaluating the medical

21 opinions of Drs. Mitiku and Goldberg in the context of plaintiff's multiple sclerosis diagnosis, as

22 required by the Ninth Circuit.

23       a.  *Legal Standard Evaluating Medical Opinion Evidence*

24       Plaintiff maintains the ALJ erred in evaluating the medical opinions of Nesanet Mitiku,

1  M.D., Myron Golberg, Ph.D., Robert Bernardez-Fu, M.D., and Gordon Hale, M.D. *See* Dkt. 14,
2  pp. 2-12. The ALJ is responsible for determining credibility and resolving ambiguities and
3  conflicts in the medical evidence. *See Reddick*, 157 F.3d at 722. Where the medical evidence in
4  the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the
5  functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases,
6  "the ALJ's conclusion must be upheld." *Morgan*, 169 F.3d at 601. Determining whether
7  inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and
8  whether certain factors are relevant to discount" the opinions of medical experts "falls within this
9  responsibility." *Id.* at 603.
10      In resolving questions of credibility and conflicts in the evidence, an ALJ's findings
11 "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this
12 "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,
13 stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences
14 "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may
15 draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes*, 881 F.2d at 755.
16      The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted
17 opinion of either a treating or examining physician. *Lester*, 81 F.3d at 830. Even when a treating
18 or examining physician's opinion is contradicted, that opinion "can only be rejected for specific
19 and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.
20 However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of*
21 *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in
22 original).  The ALJ must only explain why "significant probative evidence has been rejected."
23 *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732
24 F.2d 605, 610 (7th Cir. 1984).

1     In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830–31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

    b.  *Legal Standard Evaluating Claimants with Multiple Sclerosis*

    Multiple sclerosis is a progressively disabling condition characterized by periods of remission and exacerbation. *Estes v. R.R. Ret. Bd.*, 776 F.2d 1436, 1437 (9th Cir. 1985). The Ninth Circuit has recognized that "multiple sclerosis can be disabling notwithstanding normal activity in periods of remission." *Id.* at 1438. Quoting the Sixth Circuit with approval, the Ninth Circuit observed:

> [m]ultiple sclerosis is an incurable progressive disease subject to such periods of remission and exacerbation.... Because [the period when petitioner worked and attended school] was unquestionably a period of remission, we believe the ALJ erred in placing undue reliance on this *brief and temporary interruption of plaintiff's progressively disabling condition.* Rather, he should have considered that time-span as merely a period of remission in a continuing disability ....

*Id.* (quoting *Parish v. Califano*, 642 F.2d 188, 193 (6th Cir. 1981). In evaluating a claimant with multiple sclerosis, an ALJ must consider "the frequency and duration of the exacerbations, the length of the remissions, and the evidence of any permanent disabilities." *Wilcox v. Sullivan*, 917 F.2d 272, 277 (6th Cir. 1990). Here, the Court finds that the ALJ's treatment of Dr. Mitiku's and

Goldberg's opinions demonstrates "a lack of acquaintance with multiple sclerosis." *See Smith v. Astrue*, No. CV 10-4913-MAN, 2011 WL 3300086, at *5 (C.D. Cal. July 29, 2011).

### i. Nesanet Mitiku, M.D.

Dr. Mitiku, a physician at the University of Washington Multiple Sclerosis Clinic, treated plaintiff for multiple sclerosis and offered a medical source opinion regarding plaintiff's functional limitations. *See* AR 415-16. Although the letter is undated, it was faxed to the SSA on December 14, 2012 and, based on the contents of the letter, was apparently written following plaintiff's appointment with Dr. Mitiku in October 2012. *See id.* In the letter, Dr. Mitiku noted that plaintiff had been treated at the clinic since 1995 for multiple sclerosis. AR 415. She observed that plaintiff "has had a worsening of cognitive dysfunction, confuses very easily, and her fatigue has worsened considerably." AR 415. Dr. Mitiku also noted that plaintiff has had "debilitating fatigue" since her multiple sclerosis diagnosis in 1995, and that she suffers from vertigo and diplopia, which "interferes with her ability to read and understand written material." AR 415-16. Dr. Mitiku opined that plaintiff has "difficulty remembering things" and becomes "easily frazzled" under stress. AR 416. As to functional limitations, Dr. Mitiku opined that:

> the patient is able to sit for about 45 minutes before requiring a break. The break would need to be at least 30 minutes long. She would be able to sit for no more than 4 hours in an 8-hour period of time in an 8-hour workday. She could stand for 10 minutes before requiring a 30-minute break and could only stand for about an hour in an 8-hour day. She could walk 30 minutes before requiring a break but that break would need to be 3 hours and she would not be able to repeat the stint of walking. She no longer has the stamina to work an 8 hour day, 5 days [a] we[ek] and it's unlikely she would be able to consecutively perform work two days in a row.

AR 416.

The ALJ gave "minimal to no weight" to Dr. Mitiku's opinion. AR 22. The ALJ noted that plaintiff "maintained gainful activity for several years despite alleging severe fatigue and impaired cognition" and worked between January 2013 and April 2013 in activities that

"required more than reading and comprehending simple text." AR 22. The ALJ also noted that plaintiff's multiple sclerosis "appears to have remained stable compared to imaging from early 2010" during the time when plaintiff was working. AR 22. Finally, the ALJ determined that "Dr. Mitiku's assessment of the claimant's cognition and stamina are otherwise inconsistent with the claimant's reported activities since her amended alleged onset date." AR 22.

First, the ALJ dismissed Dr. Mitiku's opinion as undermined by plaintiff's "several years" of work prior to the alleged onset date. As an initial matter, plaintiff's work history prior to the alleged onset date is of limited probative value. *See*, *e.g.*, *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (holding that "[m]edical opinions that predate the alleged onset of disability are of limited relevance."); *Swanson v. Sec'y of Health & Human Servs.*, 763 F.2d 1061, 1065 (9th Cir. 1985) ("[W]e caution that the critical date is the date of *onset* of disability, *not* the date of diagnosis.") (emphasis in original). This is particularly true where, as here, plaintiff has been diagnosed with a progressively disabling condition. *See Estes*, 776 F.2d at 1437. The fact that plaintiff was diagnosed with multiple sclerosis in 1995, continued to work, and then quit working due to the allegedly disabling nature of her multiple sclerosis is consistent with the progressively disabling nature of multiple sclerosis. Thus, dismissing Dr. Mitiku's opinions because plaintiff worked after being diagnosed with multiple sclerosis—but before her alleged onset of disability—is not a specific and legitimate reason supported by substantial evidence.

Second, the ALJ similarly erred in discounting Dr. Mitiku's opinion because plaintiff engaged in work in 2013, after Dr. Mitiku rendered her opinion. *See* AR 22. As the Ninth Circuit has noted, "occasional symptom-free periods—and even the sporadic ability to work—are not inconsistent with disability." *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995). "It does not follow from the fact that a claimant tried to work for a short period of time and, because of his

1 | impairments, *failed*, that he did not then experience [symptoms] and limitations severe enough to
2 | preclude him from *maintaining* substantial gainful employment." *Lingenfelter v. Astrue*, 504
3 | F.3d 1028, 1038 (9th Cir. 2007) (emphases in original). In fact, such evidence in some
4 | circumstances may support allegations of disabling symptoms. *See id.* (citing *Fair v. Bowen*, 885
5 | F.2d 597, 604 (9th Cir. 1989)). Here, the ALJ determined that plaintiff's work in 2013 did not
6 | constitute substantial gainful activity. *See* AR 14. Indeed, plaintiff testified that she performed
7 | the part-time work by making use of flexibility of working from home, such as napping as
8 | necessary and taking breaks. AR 50. Although the ALJ determined that plaintiff's statements
9 | concerning the "disabling intensity, persistence and limiting effects" of her impairments were
10 | "not credible", the ALJ did not explain how plaintiff's part-time work undermined Dr. Mitiku's
11 | opinion regarding plaintiff's ability to sustain *full-time* work, her ability to sit, stand and maintain
12 | work during an 8-hour period, and her need to take breaks. *See* AR 22, 415-16. Finally, the ALJ
13 | should have considered whether plaintiff's work constituted remission of her multiple sclerosis.
14 | *See Estes*, 776 F.2d at 1437; *Wilcox*, 917 F.2d at 277.

15 |       The ALJ also relied upon plaintiff's work in 2013 to reject Dr. Mitiku's opinion, noting
16 | that plaintiff's work activity "certainly required more than reading and comprehending simple
17 | text." AR 22. Dr. Mitiku observed that plaintiff's "vertigo and diplopia interferes with her ability
18 | to read and understand written material" and also observed that plaintiff's "inability to read even
19 | simple text and comprehend it is also a feature of her cognitive dysfunction." AR 416. To the
20 | extent Dr. Mitiku was suggesting that plaintiff has the complete inability to read and comprehend
21 | even simple text at all, the Court agrees that this portion of Dr. Mitiku's opinion is undermined
22 | by plaintiff's own description of her part-time work in 2013. *See* AR 22, 50, 262-65, 415-16.
23 | Nevertheless, even if this portion of Dr. Mitiku's opinion is undermined by plaintiff's part-time
24 | work, the ALJ erred in relying upon plaintiff's part-time work to reject all of Dr. Mitiku's

1 | opinions regarding plaintiff's functional limitations.

2 |     Third, the ALJ rejected Dr. Mitiku's opinion as apparently inconsistent with plaintiff's
3 | MRI results, noting that plaintiff's multiple sclerosis "appears to have remained stable compared
4 | to imaging from early 2010, at which time the claimant was working." AR 22. As noted above,
5 | plaintiff's work prior to the alleged onset of disability is of limited probative value, particularly
6 | in the context of a diagnosis of a progressively debilitating impairment such as multiple
7 | sclerosis. Moreover, the ALJ did not explain how his interpretation of the MRI results and
8 | scans—rather than Dr. Mitiku's interpretation—are correct. Dr. Mitiku specifically noted that the
9 | MRI scans "were deemed to be abnormal and [plaintiff] was diagnosed with multiple sclerosis",
10 | AR 415, indicating that Dr. Mitiku considered the MRI scans when formulating her medical
11 | opinion. "[J]udges, including administrative law judges of the Social Security Administration,
12 | must be careful not to succumb to the temptation to play doctor. The medical expertise of the
13 | Social Security Administration is reflected in regulations; it is not the birthright of the lawyers
14 | who apply them. Common sense can mislead; lay intuitions about medical phenomena are often
15 | wrong." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (internal citations omitted)).
16 | Thus, the ALJ erred in dismissing Dr. Mitiku's opinion by determining that the MRI results
17 | undermined her opinion, without any explanation as to how his interpretation of the MRI results
18 | were correct, rather than Dr. Mitiku's interpretation.

19 |     Fourth, the ALJ discounted Dr. Mitiku's opinion as "inconsistent with the claimant's
20 | reported activities since her amended alleged onset date." AR 22. Although the ALJ mentioned
21 | plaintiff's activities of daily living earlier in his decision (*see* AR 16, 20-21), the ALJ did not
22 | identify what specific activities were inconsistent with Dr. Mitiku's opinion. *See* AR 22. The
23 | ALJ's failure to identify specific activities of daily living conflicting with Dr. Mitiku's opinion,
24 | or otherwise explain the nature of the alleged conflict, was error. *See, e.g.*, *Burrell v. Colvin*, 775

F.3d 1133, 1138 (9th Cir. 2014). Moreover, claimants need not be "utterly incapacitated" to be eligible for disability benefits (*Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)), nor should they "be penalized for attempting to lead normal lives in the face of their limitations." *Reddick*, 157 F.3d at 722. Here, the ALJ noted earlier in his decision that plaintiff drove to the grocery store and shopped, took walks with and without her dog, worked in her garden daily, and was friendly to a CDIU investigator. *See* AR 20-21. However, the ALJ did not identify what specific activities were inconsistent with Dr. Mitiku's opinion. *See* AR 22. Indeed, the activities cited by the ALJ—earlier in the decision and not in connection with discounting Dr. Mitiku's opinion— do not appear to undermine Dr. Mitiku's opinions regarding plaintiff's ability to work full-time in an 8-hour day and her ability to sit and stand in an 8-hour day. *See* AR 416. The ALJ's failure to identify specific conflicting activities of daily living, or otherwise explain the nature of the alleged conflict, was error. *See*, *e.g.*, *Burrell*, 775 F.3d at 1138. As the ALJ has not explained how plaintiff's activities of daily living contradict the symptoms and limitations observed by Dr. Mitiku, the ALJ erred in rejecting Dr. Mitiku's opinion on this basis. Accordingly, as none of the reasons the ALJ offered to reject Dr. Mitiku's opinion amount to a specific and legitimate reason, supported by substantial evidence, the ALJ erred in evaluating Dr. Mitiku's opinion.

        ii.   Myron Goldberg, Ph.D.

Plaintiff also argues that the ALJ erred in his treatment of the medical opinion of Myron Goldberg, Ph.D. Dkt. 14, p. 8-10. The ALJ rejected Dr. Goldberg's opinions for the same reasons that he rejected Dr. Mitiku's opinions, finding the opinion (1) inconsistent with plaintiff's ability to work prior to the alleged onset of disability; (2) inconsistent with plaintiff's MRI imaging, and (3) inconsistent with the "evidence of record" given plaintiff's activities since the alleged onset of disability. AR 23. However, as the ALJ erred by relying upon these same reasons to discount Dr. Mitiku's opinion, the ALJ also erred in discounting Dr. Goldberg's

opinions on these bases. Thus, upon remand, the ALJ shall also re-evaluate Dr. Goldberg's medical opinion.

       iii. Robert Bernardez-Fu, M.D.

Plaintiff also argues that the ALJ erred by failing to "obtain, exhibit, and consider the opinions of Robert Bernardez-Fu, M.D." and thus failed to fully develop the record. Dkt. 14, pp. 10-11. Defendant asserts that no such exhibit exists. Dkt. 18, pp. 10-12. As the Court recommends that this matter be remanded for further consideration, this matter is moot. The parties will have further opportunity to develop the record, upon remand, if additional records are available.

       iv. Gordon Hale, M.D.

Finally, plaintiff argues that the ALJ erred in evaluating the medical opinion of Gordon Hale, M.D. Dkt. 14, pp. 11-12. Dr. Hale, a state agency medical consultant, evaluated the medical evidence and opined that plaintiff was capable of standing or walking for four hours in an eight-hour work day, consistent with sedentary work. *See* AR 70-79. The ALJ gave Dr. Hale's opinion "significant weight", finding that Dr. Hale determined plaintiff could perform "light" work consistent with the residual functional capacity. AR 23. Defendant "concedes that Dr. Hale's opinion of the approximate number of hours Plaintiff could stand during a workday was slightly less than required under the regulations" for light work. Dkt. 18, p. 9. Given that this matter is already remanded to reconsider the medical opinion evidence and the Commissioner concedes that the ALJ erred in evaluating this portion of Dr. Hale's medical opinion, the ALJ shall also resolve any ambiguity in Dr. Hale's opinion and plaintiff's residual functional capacity.

 II. <u>This Matter Should Be Remanded for Further Administrative Proceedings</u>

Plaintiff argues that this matter should be reversed for an award of benefits given the

ALJ's errors in this matter. Dkt. 14, p. 18. The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076–77 (9th Cir. 2002). Because issues still remain in regard to the medical opinion evidence in the record, remand for further consideration of these issues is warranted.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court reverse the decision to deny benefits and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and

REPORT AND RECOMMENDATION- 12

Recommendation to file written objections thereto. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **December 23, 2016**, as noted in the caption.

DATED this 5th day of December, 2016.

Karen L. Strombom
United States Magistrate Judge